## Ex parte DAVIDSON.

(Circuit Court, D. Washington, N. D. August 23, 1893.)

1. COURTS—JURISDICTION—WAIVER OF FORM OF PROCEEDING.

On an application by the receiver of a railroad for a rule to show cause why possession of certain real property should not be surrendered to him, where the parties and the subject-matter are within the jurisdiction, and respondent voluntarily answers asserting a right to the premises, and submitting his claim for adjudication, he thereby waives his objection to the form of the proceeding.

2. PUBLIC LANDS—WHAT INCLUDED IN GRANT.

Where ledges or spits or tongues of land project out beyond the meander line of a bay, they are included as part of the fractions of sections shown on the government survey, and conveyed by government patent.

3. SAME—ACQUISITION OF RIGHT TO POSSESSION.

In a controversy for the possession of such a ledge between the receiver of a railroad and one claiming ownership it appeared that the railroad company had acquired title from the patentee to the fractional section from which the ledge extended; that the person to whose rights the claimant succeeded, at the time of the railroad survey, claimed nothing but the privilege of burning a coalpit, and was afterwards employed by the railroad company for the express purpose of holding possession of the land for it, and acting as watchman of the company's property thereon, being compensated by money and supplies and free house rent; and that claimant derived his interest by purchase from such agent. *Held*, that the railroad company had title to the property, and that the receiver was entitled to possession.

4. SAME.

If the land in question did not pass by the government patent, the title remained in the United States, and the right to possession was acquired by the railroad company when it located its line, selected the land, filed articles of incorporation and maps, and secured the approval of the secretary of the interior, pursuant to the act of March 3, 1875, granting right of way, etc., to railroads.

5. SAME—FAILURE TO PERFECT TITLE—RIGHT OF OTHERS TO POSSESSION.
    The fact that the land is yet unsurveyed, and that the railroad com-
    pany cannot perfect its title by filing a map within 12 months after
    government survey, as provided by section 4 of the act, does not entitle
    others to take it under other claims, as the appropriation of the land for
    railroad purposes takes it out of the body of the public domain.

6. SAME—PRE-EMPTION—HOMESTEAD.
    The court·will take judicial notice that the lands surrounding Seattle
    . harbor, including the land in question, have for years been selected and
    known as the site of a city; and as the land is unfitted for, and could not
    be taken as, agricultural land, under the pre-emption law, and is excluded
    from the operation of the homestead law, an individual could not acquire
    title to it simply by living upon and improving it.

In Equity. Application by Thomas R. Brown, receiver of the
Seattle, Lake Shore & Eastern Railway Company, for a rule on Jacob
Davidson, to show cause why he should not surrender to the re-
ceiver possession of certain real property alleged to belong to said
company. The respondent filed an answer containing exceptions to
the proceeding for want of jurisdiction in the court, and also set-
ting forth an adverse claim to the property, on the ground that the
same is unsurveyed public land of the United States; that he pur-
chased improvements thereon from one Lewis S. Rice; and that
he claims the right to occupy said land and acquire the title under
the United States homestead law. An issue was joined by a repli-
cation, and the case was heard upon the pleadings and evidence.
Exceptions overruled, and findings and decree for the receiver.

E. M. Carr, for receiver.
P. P. Carroll, for respondent.

HANFORD, District Judge, (orally.) The parties to this proceed-
ing and the subject-matter are within the jurisdiction of the court,
and the respondent having voluntarily set forth in his answer his
claim to the premises, and thereby submitted the same for adjudi-
cation in this summary proceeding, I hold that the objections to
such form of proceeding have been waived.

In reaching a determination of the question at issue as to the
right of possession, it is proper to take into account the character
and description of the land itself, as well as the grounds·upon which
the parties respectively base their claims to right of possession.
This land appears by the undisputed testimony in the case to be
a low ledge or sand spit, extending out from the mainland into the
harbor of Seattle. In making the government surveys the surveyor
took no account of it. It is either·land that has been made by ac-
cretion since the survey was made, or else the surveyor inten-
tionally or negligently made no note of it as land, and ran the lines
so as to leave it outside of the government survey. It is "land,"
as distinguished from "tide flats," over which the tide ebbs and
flows. It lies above the line of ordinary high tide, and is not land
to which the state of Washington.has any right or claims any right.
The declaration in the constitution of this state (article 17) that
the people of this state assert proprietorship in the shores and beds
of rivers and navigable waters up to the line of ordinary high water

is sufficient to exclude this from any claim of the state, because, by the undisputed testimony in the case, it is above ordinary high tide. No claim therefore can be predicated upon the rights of the state of Washington.

It is land to which the United States government had the title, and the government is the primary source of title. Whatever rights can be claimed by any one must rest upon the laws of the United States or a patent or grant from the government of the United States. Now, the receiver representing this railroad corporation is the plaintiff in the case, and should, if he prevails at all, prevail by virtue of having shown by the evidence a prima facie right to have possession; and after a prima facie showing is made, if there appears to be opposed to it a colorable claim, then his right should appear by the evidence to be superior or paramount to that of the defendant. The government being the source of title, the question is whether this railroad company has acquired any right to claim this land under the laws of the United States or any patent or grant from the government. It appears by the maps that, in making the surveys, sections were cut into fractions, and were made fractional by the shore of this bay, and all the grants or conveyances that the United States has made of those fractions are grants of land bounded upon tide water. The meander line is not controlling as fixing the boundary; it is simply a series of tangents run at different angles for the purpose of ascertaining approximately the quantity of land in each legal subdivision to be paid for. But the navigable water of the bay is the boundary. It is true that the decisions establish the rule that conveyances of land upon tide water convey no riparian rights; that is, no legal title to anything beyond the boundary. But a patent does convey title to all the lands within the established boundaries shown by official maps of the government surveys. Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. Rep. 808, 838; Forsyth v. Smale, 7 Biss. 201; Mann v. Land Co., 44 Fed. Rep. 27. Now, the surveys have fixed the boundaries of those fractions fronting upon the tide water of this bay, and I think that, according to the rules established by the decisions, whatever ledges or spits or tongues or points of land project out beyond the meander line are included as part of the fractions conveyed by the patents. If that is the correct view of this matter, by the chain of title including conveyances from the patentee of the United States the railroad company has acquired the title to this sand spit and owns it.

In addition to the conveyances, there is undisputed evidence that the railroad company had prior possession, and, as against this defendant, Davidson, has now the right of possession. It appears from the testimony that Mr. Rice was engaged in burning a coalpit at the time the projectors of the railroad went there to make surveys, and he was living in a cabin close to the bank, and claiming nothing except the privilege of burning a coalpit there. He was afterwards employed by the railroad company for the express purpose of holding possession of this piece of ground for the railroad company. He received from persons interested in the com-

pany money and supplies. Groceries and provisions were furnished him as compensation for holding possession of that piece of ground for the company, and he continued to receive moneys and supplies until the time of his death, for that purpose and with that understanding. In addition to that, the house he lived in was built by the railroad company, and he was allowed to live in it rent free as a further compensation, or as part of his compensation for services rendered by him to the company by living upon and holding that piece of ground, and acting as watchman to protect the tools and other property that was left upon it belonging to the company. Now, Mr. Rice could no more, by a pretended sale of his improvements to Mr. Davidson, give the right to possess and occupy that ground than a farmer's hired man could, in the absence of the farmer, sell the farm, so as to put him to the inconvenience of having to prove his title in order to regain possession. The law will not tolerate any such thing as a tenant or employe dispossessing his landlord or employer, either by setting up and claiming adverse possession himself, or by letting another into possession. Such an attempt as that is deceitful and fraudulent, and something that no right can be predicated upon under any conditions whatever. Mr. Rice was put in possession of that property, and a house was built for him there, as an employe of the company, and he could not dispose of the right of possession to another, even one who might deal with him in good faith, and without any knowledge of a fraudulent intent on his part.

But Mr. Davidson does not occupy even that position. He never saw this ground, according to his own showing, until November, 1889. The inception of his claim of right was by becoming a creditor of Rice, and loaning him money and doing work for him with a team, in payment for which he claims that in 1890 Rice attempted to deliver it over to him. He had known before that time that the railroad company claimed the ground. He had known that Mr. Rice was there as an employe of the company, and, instead of going to the company to find out about it, he inquired of Rice, and took Rice's say so. Now, any man buying property in good faith, with knowledge that another person had a claim before attempting to buy it, would go and see that person, and find out about it, unless he intended to take his chances of success in a controversy. So it is plain that Mr. Davidson, in buying the property from Rice, knowingly bought merely the chances of being able to hold it against the railroad company by litigation or otherwise. He is in the position of a man who has bought a lawsuit on speculation.

I am led to the conclusion that the railroad company has the title to the property. It had prior possession. The receiver has made a prima facie case, and, as against it, there is only a wrongful claim of possession at the utmost.

In regard to the title, this can be said further: that, if this piece of ground did not pass by the patents which the United States government issued, the title remained in the United States

up to the time when the railroad company located its line of road, and selected this piece of ground for a station, filed its articles of incorporation and maps with the department of the interior, and secured the action of the secretary of the interior in approving it, and thereby, under the provisions of the act of March 3, 1875, (Supp. Rev. St. [2d Ed.] 91,) acquired it by grant from the United States to the company direct. The act does not limit the right of railroad corporations to acquire ground for right of way and station purposes to surveyed lands. It plainly contemplates that railroads may be extended across unsurveyed lands, and it simply requires that, after the surveys are made, a profile or map shall be filed and approved by the secretary. This land was surveyed by an employe of the railroad company, and notes of the survey accompanied the map, and there is room to argue at least that the secretary of the interior approved this survey. But, whether that is so or not, the railroad company have acquired the right under said act to have possession. If the title has not been perfected by filing a map after survey, the land being yet unsurveyed, the land is not for that reason exposed to be taken under another claim. The appropriation of it for railroad purposes takes it out of the body of the public domain, and prevents any settler from going upon it and claiming it under any of the other land laws of the United States.

The land is not subject to be taken under the homestead or pre-emption laws. It is not land that can be settled upon and taken under either of those laws, or any law that I know of that gives an individual the right to acquire title to land by living upon and improving it. The land laws of the United States are very liberal in giving the people the right to settle upon agricultural land, and acquire title to it, and in providing for the sale of mineral and timber lands. But this piece of ground comes within the provisions of neither of those laws. It is not mineral land nor timber land. It is not land that can be taken as agricultural land under the homestead law. The terms of the homestead law authorize a settler to acquire a homestead upon unappropriated public lands upon which he may have filed a pre-emption claim, and which may be subject to entry under the pre-emption laws. Section 2258 of the Revised Statutes of the United States excepts and reserves certain classes of land from entry under the pre-emption law. Among the descriptions of land so reserved are lands included within the limits of any incorporated town, or selected as a site for a city or town, or used in any way for trade or business.

Now, it is a matter of such general knowledge that the court will take judicial notice of it, that the lands surrounding this harbor have been for many years selected for and known as the site of a city. It is true that it has not all of it been covered and occupied by brick buildings or city improvements, but it is—all of it—the site of a city, and occupied for purposes of trade and business. The land in controversy lies on the water front next to tide water. It is not land that can be taken as agricultural

land under the pre-emption law; and, if not under the pre-emption law, then it is excluded under the homestead law. Any pretense of a man that he has taken up such a piece of ground right in the harbor of the city of Seattle, as a farm, or to maintain a poultry yard upon it, is a transparent sham. The land is valuable for other purposes, and no one would contemplate using it for purposes other than those for which it is most valuable; that is, as a location for trade and business. As early as 1885 this railroad company went there, and surveyed this land, and entered into possession of it for the purpose of business; and, long before Mr. Davidson saw it, it was occupied and actually used for business and trade, and was therefore reserved from entry by the terms of the pre-emption law.

On this question as to the right of possession, I have no doubt, and shall hold, that the receiver is entitled, as against Mr. Davidson, to have immediate possession of the ground. I direct that an order be prepared requiring the respondent within 10 days to vacate the premises, and surrender possession to the receiver, and the order will be enforced by proper proceedings, if necessary.